UNITED STATES DISTRICT COURT
NORTHERN DISTRICT INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) Civil Case No. 2:13-cv-00097-JD-JEM |
| v. | ) |
| JOHN DOE subscriber assigned IP address 98.220.153.245, | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES**

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(f) hereby moves for entry of an order striking Defendant's Affirmative Defenses, and files this memorandum in support:

**I.     INTRODUCTION**

Plaintiff's Complaint was filed on March 14, 2013 alleging direct copyright infringement against Defendant.  On October 17, 2013 Defendant filed his Answer asserting ten affirmative defenses against Plaintiff's Amended Complaint.  Plaintiff, pursuant to Rule 12(f), hereby moves for the entry of an order striking Defendant's Fourth Affirmative Defense (Implied License), Fifth Affirmative Defense (Copyright Misuse), Sixth Affirmative Defense (Abandonment), Eighth Affirmative Defense (First Sale Doctrine), Ninth Affirmative Defense (Online Copyright Infringement Liability Limitations Act), and Tenth Affirmative Defense (Unclean Hands).  As explained more fully below, each of these affirmative defenses is insufficient and, accordingly, the Court should grant Plaintiff's Motion.

1

## II. LEGAL STANDARD

The Court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P. 12(f)*. "The decision whether to strike material is left to the court's discretion." *E.E.O.C. v. New Indianapolis Hotels, LLC*, 2011 WL 63909 (S.D. Ind. 2011) (*citing Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 665 (7th Cir.1992)). Motions to strike "may be granted if they remove unnecessary clutter from a case and expedite, rather than delay, the case." *Spencer County Redevelopment Com'n v. AK Steel Corp.*, 2011 WL 3806947 (S.D. Ind. 2011) (citation omitted).

"An affirmative defense is a pleading subject to Rule 8(a), and therefore must include a short and plain statement of the defense." *Malibu Media, LLC v. Doe*, 2013 WL 4048513, at *1 (N.D. Ind. Aug. 9, 2013) (granting motion to strike). When presented with a motion to strike, "courts apply a three-part test: '(1) whether the matter is properly pled as an affirmative defense; (2) whether the affirmative defense complies with Federal Rules of Civil Procedure 8 and 9; and (3) whether the affirmative defense can withstand a Rule 12(b)(6) challenge.'" *Id.*, citing *Ortho–Tain, Inc. v. Rocky Mountain Orthodontics, Inc.,* 2007 WL 1238917, at *1 (N.D.Ill. 2007). Affirmative defenses "must include either direct or inferential allegations as to all elements of the defense asserted, and bare bones conclusory allegations do not suffice." *Id.* (Citation omitted). Accordingly, where affirmative defenses "omit[] any short and plain statement of facts and fail[] totally to allege the necessary elements of the alleged claims," they are properly stricken. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1295 (7th Cir. 1989) (internal citation omitted).

### III. ARGUMENT

#### A. Defendant's Fourth Affirmative Defense (Implied License) Should be Stricken

Defendant's Fourth Affirmative Defense is conclusory and therefore insufficiently pled. Defendant's Fourth Affirmative Defense merely states that "Plaintiff Malibu authorized, impliedly or explicitly, any infringing use of its works, and its claims . . . are therefore barred by the doctrine of implied license." Answer, p. 12. Defendant's Fourth Affirmative Defense does not contain any "explanation of how the[] defense[] purportedly appl[ies]," and as pled, "it is not enough to survive the motion to strike." *Malibu Media, LLC v. Doe*, 2013 WL 4048513, at *3 (N.D. Ind. 2013) (striking implied license affirmative defense).

Defendant has not alleged and has failed to establish the necessary elements for the Court to find the existence of an implied license. Although the Copyright Act does not permit the exclusive transfer of copyright ownership absent a writing, a court may find that a nonexclusive license has been implied by either the conduct of, or an oral agreement between, the parties involved. *See I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996). An implied license arises where the following three elements are met: (1) the licensee requests the creation of a work; (2) the licensor creates the work and delivers it to the licensee; and (3) the licensor intends that the licensee copy and distribute the work. *Id.*, citing *Effects Assocs. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990). *See also Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999).

None of the prongs of the *Effects* test above can be met in this instance. First, Defendant has not and cannot allege that he or she requested the work in question from Plaintiff. Prior to this lawsuit Plaintiff and Defendant were total strangers. Second, in the context of <u>unauthorized</u> file sharing, under no set of circumstances can Defendant establish that Plaintiff created the work and delivered it to Defendant pursuant to a "meeting of the minds." *See, e.g., Farr v. Ohio Oil*

3

*Co.*, 129 F. Supp. 219, 220 (N.D. Ind. 1955) (holding that an implied contract "grows out of the intentions of the parties and there must be a meeting of the minds."); *Ulloa v. Universal Music and Video Distribution Corp.*, 303 F.Supp.2d 409, 416 (S.D.N.Y. 2004) ("In order to establish an implied license, as for any implied contract, they must prove that there was a meeting of the minds.") Third, under the facts in this case, Plaintiff clearly did not intend for Defendant to copy and distribute the work, since it is now suing Defendant for infringement. *See, e.g., Luar Music Corp. v. Universal Music Group, Inc.*, 861 F.Supp.2d 30, 37 (D.P.R. 2012) ("Nonexclusive licenses may be granted if the copyright owner does not object to the putative infringer's use of copyrighted material.").

"Defendant's Answer forecloses the possibility of an implied license defense." *Malibu Media, LLC v. Doe*, 2013 WL 4048513, at *4 (N.D. Ind. 2013). In short, Defendant has denied using BitTorrent to commit the infringement alleged. Accordingly, he cannot satisfy the elements of an implied license affirmative defense.

> In his Answer, Defendant denies the allegations contained in this paragraph. (Answer ¶ 30.) With this general denial, Defendant appears to be denying not only that he copied and distributed the parts of Plaintiff's copyrighted works, but that he used BitTorrent to do so. As such, Defendant cannot demonstrate that "he requested Plaintiff's work via BitTorrent, that Plaintiff delivered the work, and that Plaintiff intended [Defendant] to distribute it," as required to establish an implied license defense.

*Id.*

Accordingly, Defendant's Fourth Affirmative Defense is insufficient and should be stricken.

### B. Defendant's Fifth Affirmative Defense (Copyright Misuse) Should be Stricken

Defendant's conclusory Fifth Affirmative Defense should be stricken. For his Fifth Affirmative Defense, Defendant states "[t]hat Plaintiff Malibu's claims are barred by the

4

doctrine of misuse of copyright." Answer, p. 12. "The doctrine of 'misuse prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly.'" *Assessment Techs. of WI, LLC v. WIREdata, Inc.,* 350 F.3d 640, 647 (7th Cir. 2003) (quoting *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1026–27 (9th Cir.2001)). The defense of misuse of copyright "was first asserted in copyright cases in challenges to restrictive licensing terms, although it has outgrown such antitrust like roots and now applies, inter alia, to efforts to misrepresent or extend rights beyond the scope of one's copyright." *5 Patry on Copyright § 17:128*.

Here, Defendant has not alleged that Plaintiff is attempting to unlawfully extend the limited monopoly granted to it by the Copyright Act nor has it alleged any other improper behavior with regard to the copyrights at issue. Defendant's allegations fail to allege any element of the defense of misuse of copyright. "There is no evidence here that plaintiffs seek to control areas outside of their grant of monopoly. Rather, plaintiffs seek to control reproduction and distribution of their copyrighted works, exclusive rights of copyright holders." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1027 (9th Cir. 2001).

Plaintiff has never misused its copyrights. Significantly, all Plaintiff has ever done with respect to its copyrights is bring suits to enforce them; as a matter of law, doing so is not copyright misuse. *See, e.g., Nielsen Co. (US), LLC v. Truck Ads, LLC*, 2011 WL 221838 (N.D. Ill. 2011) ("The mere fact that a copyright holder files suit for infringement cannot, of course, be the basis for a copyright misuse claim."); *Huthwaite, Inc. v. Ecolab, Inc.*, 2006 Copr. L. Dec. P 29137 (N.D. Ill. 2006) ("Claiming infringement by a writing cannot possibly be copyright misuse unless the claim is patently frivolous."); *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D.N.J. 2005) ("Defendants allege only that Plaintiffs have filed lawsuits and

otherwise sought to enforce their copyrights. This allegation, however, is insufficient as a matter of law to state a copyright misuse claim, as the fact of enforcing a valid copyright, without more, simply cannot constitute copyright misuse.")

Defendant's Fifth Affirmative Defense thus fails as a matter of law and should be stricken.

### C. Defendant's Sixth Affirmative Defense (Abandonment) Should be Stricken

Defendant's Sixth Affirmative Defense should be stricken since it "omits any short and plain statement of facts and fails totally to allege the necessary elements of the alleged claims[.]" *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1295 (7th Cir. 1989) (internal citation omitted). To wit, Defendant's Sixth Affirmative Defense merely states that "Plaintiff Malibu's claims are barred as a result of Plaintiff Malibu's abandonment of its intellectual property." Answer, p. 12. "Abandonment of a copyright occurs if the owner intends to give up his copyright protection. Some overt act is necessary to evidence such an intent ... mere inaction is not enough. The presence of a notice is strong evidence of an intent not to abandon." *Jackson v. MPI Home Video*, 694 F. Supp. 483, 490 (N.D. Ill. 1988) (citation omitted). *See also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) ("In copyright, waiver or abandonment of copyright 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work.'") citing 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* ¶ 13.06 (2000)).

No action taken in this case by Plaintiff has evinced an intent to surrender its rights in the subject works. To the contrary, Plaintiff seeks to protect its copyrighted works from infringers who use the BitTorrent protocol to unlawfully download and distribute its movies. Indeed, Plaintiff has enacted a national campaign against such infringers and this lawsuit is a part of

6

Plaintiff's anti-infringement efforts. Further, Plaintiff's website, x-art.com, clearly states that all content on the website is copyrighted and that "unauthorized reproduction, distribution or use of the Content is strictly prohibited." *See* x-art.com/legal/. And, as stated above, "notice is strong evidence of an intent not to abandon." *Jackson*, 694 F. Supp. at 490. As Plaintiff's copyright protection efforts and this lawsuit make clear, Plaintiff has not evinced intent to surrender its rights in the works and instead seeks to avidly protect them. Defendant's bare bones conclusory Sixth Affirmative Defense is therefore insufficient and should be stricken.

### D. Defendant's Eighth Affirmative Defense (First Sale Doctrine) Should be Stricken

For his Eighth Affirmative Defense, Defendant asserts "[t]hat Plaintiff Malibu's claims are barred pursuant to 17 U.S.C. § 109, commonly known as the first sale doctrine, and also regularly referred to as 'exhaustion.'" Answer, p. 12. Defendant's Eighth Affirmative Defense fails as a matter of law because "the first sale defense is limited to *material* items, like records, that the copyright owner put into the stream of commerce." *Capitol Records, LLC v. ReDigi Inc.*, 2013 WL 1286134 at *10 (S.D.N.Y. 2013) (emphasis added.) The first sale doctrine does not apply to *digital* files. *Id.*

> 17 U.S.C. §109 provides:
>
> Notwithstanding the <u>provisions of section 106(3)</u>, the owner of a particular copy or phonorecord <u>lawfully made</u> under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of <u>that</u> copy or phonorecord.

17 U.S.C. § 109(a) (emphasis added). The first sale doctrine does not apply to digital files because a copy of a digital file is a new and different material object than the original. To hold otherwise would mean that the first person who ever downloaded a blockbuster movie could distribute copies of that download to the rest of the world. And, that only the original

7

downloader would have to pay.  Obviously, if that were the law no movie company would ever authorize its product to be distributed digitally.

Further, the first sale doctrine only applies to <u>lawfully</u> made copies of the copyrighted work.  *See* 17 U.S.C. § 109(a); *United States v. Sachs*, 801 F.2d 839, 843 (6th Cir. 1986) ("the first sale doctrine is not applicable to 'bootleg' copies since, by definition, a 'bootleg' copy is not authorized and the copyright owner could not have parted with his title to that copy through a first sale.")  No copy of Plaintiff's work obtained through BitTorrent is a lawfully made copy.  Because Defendant did not acquire the same specific tangible, physical, material copy of Plaintiff's copyrighted works from a third party who paid for it, Defendant's Eighth Affirmative Defense fails as a matter of law and should be stricken.

### E. Defendant's Ninth Affirmative Defense (Online Copyright Infringement Liability Limitations Act) Should be Stricken

Defendant's Ninth Affirmative Defense claims, "[t]hat Defendant John Doe is not liable to Plaintiff Malibu pursuant to 17 U.S.C. § 512, commonly known as the 'Online Copyright Infringement Liability Limitation Act.'"  Answer, p. 12.  Defendant's Ninth Affirmative Defense fails as a matter of law because Defendant does not qualify for the safe harbor provisions of the Copyright Act as set forth in 17 U.S.C. § 512.  Accordingly, Defendant's Ninth Affirmative Defense should be stricken.

Defendant does not qualify for the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA") as per the Online Copyright Infringement Liability Limitations Act. 17 U.S.C. § 512, *et seq.*, does not apply to Defendant.  In short, it applies to Internet Service Providers ("ISPs").  Here, Plaintiff sued Defendant for direct copyright infringement as an individual who has engaged in unlawful file-sharing.  "To qualify for the 'safe harbor' provisions under the DMCA, a party must meet certain threshold requirements, including that the party (1)

8

must be a 'service provider' as defined by the statute." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 743 (S.D.N.Y. 2012). There are two definitions for the term "service provider":

> (A) As used in subsection (a), the term 'service provider' means an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.
>
> (B) As used in this section, other than subsection (a), the term 'service provider' means a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in paragraph (A).

17 U.S.C. § 512(k)(1).

It is clear from the above definitions that Defendant—an individual and <u>not</u> a commercial entity or provider of online services—does not qualify for the safe harbor provisions of § 512. "In short, a natural person in the defendant's position . . . simply does not qualify as a 'service provider.' Therefore, the defendant's argument that she is immune from suit under the terms of § 512(a) is without merit." *Patrick Collins, Inc. v. Barbara Suter*, 1:12-cv-00971-BAH, CM/ECF 18 at pp. 8-11 (D.D.C. Sept. 1, 2012), Exhibit A.

Additionally, the "Conditions for Eligibility" found in § 512(i) must be satisfied in order to take advantage of the safe harbor provisions. For example, under 512(i) a service provider is only immune if it "has adopted and reasonably implements, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination . . . of subscribers and accounts holders . . . who are repeat infringers." *Id.* at (1)(A). Defendant has no subscribers nor accountholders and no policy that provides for termination for those who are repeat infringers. Indeed, "Congress decided to pass a special set of rules for ISPs . . . It is

9

not the role of this Court to extend Congress's specific intent . . .[.]" *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 418 (D.N.J. 2005). "Judging from the statutory text and the case law, Malibu is correct . . . it is clear that 'service provider' is intended to refer to commercial entities. . . The court is aware of no case where Section 512's safe harbor provision was extended to a private individual[.]" *Malibu Media, LLC v. Does 1*, 2013 WL 1702549, at *7 (E.D. Pa. 2013).

Accordingly, Defendant's Ninth Affirmative Defense fails as a matter of law and should be stricken.

### F.  Defendant's Tenth Affirmative Defense (Unclean Hands) Should be Stricken

Defendant's Tenth Defense merely states that "Plaintiff Malibu should not recover any damages under the doctrine of unclean hands." Answer, p. 13. As pled, Defendant's Tenth Affirmative Defense is a "bare bones conclusory allegation" that "fails totally to allege the necessary elements of the alleged claims." *Parker v. Rockies Exp. Pipeline LLC*, 2012 WL 4762138 (S.D. Ind. 2012); *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1295 (7th Cir. 1989). Defendant's Tenth Affirmative Defense is unsupported by a single factual allegation. Indeed, Defendant has failed to allege the requisite elements of a defense of unclean hands. Accordingly, Defendant has failed to provide notice of his defense and the grounds upon which it is asserted in violation of Rule 8 and the standard set forth in *Heller* above.

"[U]nclean hands [is an] equitable defense[] that must be pled with the specific elements required to establish the defense." *Malibu Media, LLC v. Doe*, 2013 WL 4048513, at *1 (N.D. Ind. 2013). To successfully assert the defense of unclean hands, Defendant must "demonstrate three things: (1) [Plaintiff's] misconduct was intentional; (2) [Plaintiff's] wrongdoing concerned the [Defendant] and had an immediate and necessary relation to the matter in litigation; and (3)

[Defendant was] injured by [Plaintiff's] conduct." *Murray v. Conseco, Inc.*, 2009 WL 1357235 (S.D. Ind. 2009). Defendant alleges no intentional misconduct concerning Defendant that had an immediate and necessary relation to this case nor any resultant harm. Accordingly, Defendant's Tenth Affirmative Defense should be stricken as conclusory and insufficiently pled.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant the subject Motion.

**WHEREFORE,** Plaintiff, Malibu Media, LLC, respectfully requests entry of an order:

(A)     Granting Plaintiff's Motion to Strike Defendant's Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Affirmative Defenses;

(B)     Striking Defendant's Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Affirmative Defenses; and

(C)     Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated:  November 7, 2013

                                        Respectfully submitted,

                                        NICOLETTI & ASSOCIATES, PLLC

                              By:     /s/ *Paul J. Nicoletti*
                                        Paul J. Nicoletti, Esq. (P44419)
                                        36880 Woodward Ave, Suite 100
                                        Bloomfield Hills, MI 48304
                                        Tel:  (248) 203-7800
                                        Fax:  (248) 203-7801
                                        E-Fax: (248) 928-7051
                                        Email:  paul@nicoletti-associates.com
                                        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 7, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                                              By:    /s/ *Paul J. Nicoletti*